**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TRACY PASSA, on behalf of herself
and all others similarly situated,**

   **Plaintiff,**

  **vs.**         **CASE NO. 2:03-CV-81**

              **MAGISTRATE JUDGE KING**

**CITY OF COLUMBUS, *et al.*,**

   **Defendants.**

## OPINION AND ORDER

   Plaintiff, Tracy Passa ("plaintiff"), acting on behalf of herself and a putative class of

plaintiffs, alleges that defendants violated the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692 *et seq.*, Ohio's Consumer Sales Practices Act, Ohio Revised Code ("O.R.C.") § 1345.01

*et seq.*, the civil forfeiture provisions of Ohio's RICO Act, O.R.C. § 2923.31 *et seq.*, 42 U.S.C. §

1983 ("Section 1983 "), and engaged in fraudulent misrepresentation under Ohio law in

connection with the City of Columbus' "Check Resolution Program."  Named as defendants are

the City of Columbus, Buckeye Check-Cashing, Inc. and BCCI Management Co. dba

Check$mart ("Check$mart"), Quick Cash Advance, Inc. dba Quick Cash USA ("Quick Cash")

and Cash Till Payday, Ltd. dba Always Payday ("Cash Till Payday").

   With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on

*Defendants Buckeye Check Cashing, Inc. and BCCI Management Co.'s Motion to Stay*

*Proceedings and Compel Arbitration* ("*Check$mart's Motion to Stay and Compel Arbitration*"),

Doc. No. 46, and the *Motion of Defendant Cash Till Payday, Ltd. to Stay, and/or to Compel*

*Arbitration as to Defendant Cash Till Payday, Ltd*. ("*Cash Till Payday's Motion to Stay and/or Compel Arbitration*"), Doc. No. 62.  For the reasons that follow, Check$mart's motion is **GRANTED** and Cash Till Payday's motion is **DENIED**.

## I.    BACKGROUND

Plaintiff is a resident of Noble County, Ohio.  *Amended Complaint*, at ¶ 18.  Plaintiff obtained several "pay day" loans from Check$mart, a business located in Zanesville, Ohio, and licensed to make such loans pursuant to O.R.C. § 1315.35 *et seq*.  *Id.*, at ¶¶ 19-22, 57. Check$mart required plaintiff to issue postdated checks to serve as collateral for these loans.  *Id.*, at ¶¶ 23, 59.  In addition, plaintiff and Check$mart executed a contract ("*Contract*") which set forth the terms of the pay day loan.  *Exhibit A* attached to *Check$mart's Motion to Stay and Compel Arbitration* and *Exhibit A* attached to *Check$mart's Reply in Support of its Motion to Stay and Compel Arbitration* ("*Check$mart's Reply*").

The *Contract* contains an arbitration provision.  The front page of the *Contract* reads:

**SEE REVERSE FOR ARBITRATION PROVISION AND PRIVACY POLICY**

The reverse side of the *Contract* includes the following language:

1.    **Agreement to Arbitrate and Disclosures**:  **BY SIGNING THIS AGREEMENT, YOU AGREE THAT FOR ANY AND ALL DISPUTES ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY PRIOR AGREEMENT BETWEEN YOU AND US (COLLECTIVELY REFERRED TO AS "AGREEMENTS"), YOUR APPLICATIONS FOR SUCH AGREEMENTS, OR ANY INSTRUMENT RELATING TO THOSE AGREEMENTS, EITHER YOU OR WE OR THIRD-PARTIES INVOLVED CAN CHOOSE TO HAVE THE DISPUTE RESOLVED BY BINDING ARBITRATION AS SET FORTH IN THE PARAGRAPHS BELOW.  BECAUSE THIS IS A WAIVER OF CERTAIN RIGHTS IT IS IMPORTANT THAT YOU READ THE ENTIRE ARBITRATION PROVISION CAREFULLY BEFORE SIGNING THIS AGREEMENT.**

2

The arbitration provisions also set forth the scope of the provision (which will be discussed in detail *infra*), the procedure for the selection of the arbitrator (pursuant to the American Arbitration Association ("AAA") rules), the applicable law, the location of arbitration (the federal judicial district in which plaintiff resides) and severability.  The provision goes on as follows:

5.      <u>WAIVER OF RIGHTS</u>: THE PARTIES UNDERSTAND THAT, IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM:

      (a)      NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN A COURT OTHER THAN AS SET FORTH ABOVE IN PARAGRAPH 2;

      (b)      NEITHER YOU NOR WE WILL HAVE A RIGHT TO A JURY TRIAL ON THAT CLAIM;

      (c)      NEITHER YOU NOR WE HAVE THE RIGHT TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED BY THE ARBITRATION RULES; and

      (d)      THERE SHALL BE NO AUTHORITY FOR ANY CLAIM TO BE ARBITRATED ON A CLASS ACTION BASIS.  AN ARBITRATION CAN ONLY DECIDE OUR OR YOUR CLAIM AND MAY NOT CONSOLIDATE OR JOIN THE CLAIMS OF OTHER PERSONS WHO HAVE SIMILAR CLAIMS.

      OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION

6.      <u>Fees and Expenses</u>: At your written request, we will advance the arbitration fees (including applicable filing fees, hearing fees, and arbitrator's fees) for any claim that you may file against us.  The arbitrator will decide whether we or you will ultimately be responsible for paying any fees in connection with the arbitration, taking into account whether you are financially able to pay such fees.  Unless inconsistent with applicable law, each party shall bear the expenses of their respective attorneys and witness fees, regardless of which party prevails in the litigation.


<u>Contract</u>.

3

Plaintiff signed the *Contract*.  *Plaintiff's Affidavit* ("*Pl. Aff.*"), ¶ 6, attached to *Plaintiff's Memorandum Contra Check$mart's Motion to Stay and Compel Arbitration* ("*Plaintiff's Memorandum Contra Check$mart's Motion*").  Plaintiff does not dispute that the *Contract* itself, which set forth the terms of the pay day loan, is valid and enforceable.  *Id.*  Plaintiff repaid all proceeds of the loans she received from Check$mart, with the exception of one that became due on May 8, 2002.  *Amended Complaint*, at ¶¶ 26, 63.  Plaintiff informed Check$mart that she could not repay that loan and that her postdated check would be dishonored if negotiated.  *Id.*, at ¶ 65.  After plaintiff failed to repay the May 8, 2002, loan, Check$mart attempted to negotiate the postdated check issued as collateral.  *Id.*, at ¶¶ 29, 65.  Plaintiff's checking account contained insufficient funds to cover the check.  *Id.*, at ¶¶ 65, 66.

The City of Columbus maintains a Check Resolution Program through the Dispute Resolution Unit of the City Attorney's Office.  *Id.*, at ¶ 26.  That program provides mediation services to merchants and their allegedly delinquent customers.  *Id.*, at ¶¶ 27-32.  Merchants who are eligible to participate in the Check Resolution Program file a certified case submission application with the prosecutor's office in Columbus, Ohio.  *Id.*, at ¶ 32.  The case submission is automatically accepted and a hearing date is docketed.  *Id.*, at ¶ 36.  Notices are then mailed from the prosecutor's office to the alleged delinquent customers requesting that they appear at the Franklin County Municipal Court to resolve a complaint made against them regarding a dishonored check.  *Id.*

On July 11, 2002, plaintiff received a notice indicating that Check$mart had scheduled a mediation through the Check Resolution Program, to be held on July 31, 2002, at 4:30 p.m., in an attempt to resolve a dispute related to a dishonored check.  *Id.,* at ¶¶ 76-78 and *Exhibit 9,*

pg. 1 attached to *Amended Complaint*. On August 6, 2002, the City of Columbus sent a second notice to plaintiff, indicating that because she had not appeared at the first scheduled mediation, another mediation had been scheduled for August 14, 2002. *Id.,* at ¶ 80 and *Exhibit 9*, pg. 3, attached to *Amended Complaint*.

Plaintiff contends that Check$mart had actual notice that her bank account lacked sufficient funds to cover the check. *Id.*, at ¶ 61. Thus, plaintiff concludes that she did not commit the criminal offense of knowingly negotiating a check for which she lacked sufficient funds. *Id.*, at ¶ 48 (citing O.R.C. § 2913.11(B)). Instead, plaintiff contends that she defaulted on a consumer loan for which a postdated check served as collateral. *Id.*, at ¶¶ 68-71 (citing O.R.C. § 1315.35 *et seq.*). This type of default, plaintiff asserts, is subject to only civil liability, not criminal liability. *Id.* Plaintiff alleges that the City of Columbus illegally "lent Check$mart its official status and authority to assist Check$mart in collecting this consumer payday loan . . . ." *Id.*, at ¶ 76.

Plaintiff alleges that Quick Cash and Cash Till Payday engaged in similar misconduct with their customers. *Id.*, at ¶¶ 7, 8, 84-118. Plaintiff contends that the City of Columbus made at least one communication to approximately 20,000 persons at the requests of Check$mart, Quick Cash and Cash Till Payday. *Id.*, at ¶ 7.

On June 3, 2005, plaintiff filed the *Amended Complaint,* Doc. No. 33, naming as defendants the City of Columbus, Check$mart, Quick Cash and Cash Till Payday. Plaintiff contends that all defendants violated the Fair Debt Collection Practices Act, Ohio's Consumer

5

Sales Practices Act, Ohio's RICO Act, Section 1983 and the tort laws of Ohio based on their

participation in the City of Columbus' Check Resolution Program.  *Id.*, at ¶¶ 84-118.[1]

## II.    STANDARD OF REVIEW

All parties agree that the motions presently before the Court are governed by the Federal

Arbitration Act ("FAA").  *Check$mart's Motion to Stay and Compel*, at 5; *Plaintiff's*

*Memorandum Contra Check$mart's Motion*, at 3.  "At common law, American courts were

loathe to order specific enforcement of an agreement to arbitrate, adopting the 'jealous notion

held by the common law courts of England that arbitration agreements were nothing less than a

drain on their own authority to settle disputes.'" *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir.

2004) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 853 (S.D. Ohio 2003) and *Dean*

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 n.6 (1985)).  "In response, Congress enacted

the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, 'to place arbitration agreements upon the same

footing as other contracts.'" *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20,

24 (1991)).

The FAA provides that arbitration clauses in commercial contracts "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2.  "By its terms, the Act leaves no room for the

exercise of discretion by a district court, but instead mandates that district courts shall direct the

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

*Dean Witter Reynolds Inc.*, 470 U.S. at 218 (1985) (citing 9 U.S.C. § 3).

---

[1]The motions to dismiss for lack of subject matter jurisdiction, filed by defendants Quick Cash and Cash Till Payday, were denied by this Court.  Doc. No. 80.

The FAA "manifests 'a liberal federal policy favoring arbitration agreements.'" *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626-27 (6th Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  In furtherance of this policy, the FAA 'provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement.'" *Id.* (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).

This Court is charged with four tasks when considering a motion to stay proceedings and compel arbitration under the FAA:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 452 (6th Cir. 2005) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) and *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  *See also Masco Corp.*, 382 F.3d at 626-27 (Before compelling an unwilling party to arbitrate, a court "must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.").

III.    CHECK$MART'S MOTION TO STAY AND COMPEL ARBITRATION

Check$mart requests that this Court stay these proceedings and compel arbitration of plaintiff's dispute with it.  Check$mart contends that the *Contract* includes a valid arbitration

7

provision and that the dispute between it and plaintiff falls within the substantive scope of that provision. The Court agrees.

A. **The Parties Agreed to Arbitrate**

This Court must first determine whether plaintiff and Check$mart agreed to arbitrate, *i.e.*, whether the parties executed a valid agreement to arbitrate. *See Stout*, 228 F.3d at 714. "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Co., Inc. v. Great Earth Int'l*, 288 F.3d 878, 889 (6th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997)). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.* Thus, this Court will view all facts and inferences drawn therefrom in the light most favorable to plaintiff, and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists. *Id.* (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Plaintiff argues that *Check$mart's Motion to Stay and Compel Arbitration* cannot prevail because Check$mart failed to submit an authenticated copy of the *Contract*. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 5. Plaintiff also contends that, even if the agreement had been properly documented before the Court, the agreement is invalid because there was no mutual assent between the parties and because there was no exchange of actual, bargained for consideration between the parties. *Id.* Finally, plaintiff argues that, even if a valid arbitration agreement is proven to exist, Ohio law would prohibit its enforcement.

1. *Authenticated contract*

8

Plaintiff argues that Check$mart has not proven the existence of a valid and enforceable arbitration provision because it did not attach an authenticated copy of the *Contract* to its motion to stay and to compel arbitration. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 3. While it is true that Check$mart did not attach an authenticated copy of the *Contract* to its motion, the existence of the *Contract*, plaintiff's signature on the *Contract* and plaintiff's possession of a copy of the *Contract* are simply not in dispute. *See Pl. Aff.*, at ¶ 6. Check$mart did, however, attach an authenticated copy of the *Contract* to its reply in support of its motion. Plaintiff does not, nor could she, contend that she has been prejudiced by Check$mart's late submission of an authenticated copy of the *Contract*. To deny Check$mart's motion for this procedural mistake would be to exalt form over substance, which the Court declines to do.

### 2. *Mutual assent and bargained for consideration*

Relying on *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967), plaintiff contends "that the validity and enforceability of an arbitration clause 'embedded' in a broader substantive contract must be analyzed on its own standing, as a 'contract within a contract,' independent and separate from the contract in which it appears." *Plaintiff's Memorandum Contra Check$mart's Motion*, at 5. Thus, plaintiff reasons, even if the *Contract* contains all of the necessary elements of a valid contract, the arbitration provision likewise requires proof of these elements–including mutual assent and an exchange of actual, bargained for consideration. *Id.* Plaintiff argues that there was no mutual assent, or meeting of the minds, nor was there an exchange of consideration with regard to the arbitration provision. *Id.* Plaintiff's argument is not well-taken.

9

The United States Court of Appeals for the Sixth Circuit, in interpreting *Prima Paint*, explained that *Prima Paint* did not require that an arbitration provision embedded in a broader, valid contract independently contain the elements of a valid contract.  *Glazer v. Lehman Bros., Inc.*, 394 F.3d at 452.  "[T]he Supreme Court in *Prima Paint* did not hold that arbitration provisions in contracts are 'severable' to such an extent that they should be considered separate and distinct contracts."  *Id.* (citing *Prima Paint*, 388 U.S. at 452-53).  "Rather, the Supreme Court held merely that arbitration clauses should be reviewed to determine whether the dispute should be referred to arbitration (primarily because Section 4 of the FAA explicitly directs the courts to order arbitration once the arbitration clause is no longer at issue)."  *Id.*

> In other words, arbitration provisions are "severable" because the FAA does not permit the courts to examine the enforceability of contracts containing arbitration provisions.  Thus, nothing in *Prima Paint* actually states or provides that arbitration provisions are to be considered separate, distinct and independent contracts, as the District Court concluded.

> For the reasons discussed herein, arbitration provisions, although severable insofar as they are considered in determining whether a contractual dispute should be submitted to arbitration, are not "separate, independent and distinct contracts."  Although *Prima Paint* clearly requires courts to separately examine arbitration clauses, those clauses should not be considered as "separate contracts" outside of the underlying agreement.

*Id.* (internal citations omitted).

Thus, whether there was an exchange of consideration or mutual assent to the arbitration agreement is of no consequence.  Accordingly, even accepting as true plaintiff's statements regarding the lack of consideration and the lack of mutual assent, she cannot raise a genuine issue as to the validity of the arbitration provision.

10

However, even if the arbitration provision did require consideration and a meeting of the minds separate and distinct from the *Contract*, the provision would nevertheless be valid because both were present.

        a.    <u>Mutual assent</u>

Plaintiff contends that she and Check$mart did not mutually assent to the arbitration provision because her "declaration denies any conscious knowledge of facts material to any agreement to arbitrate with Check$mart; in fact, Check$mart had no discussions about arbitration with her" and because the arbitration agreement was "hiding" in "small print on the reverse side" of an adhesion contract. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 6.

However, as Check$mart correctly asserts, plaintiff's argument overlooks settled Sixth Circuit authority that dictates that the failure to read a contract is not a basis for avoiding enforcement of the terms of the contract, particularly with respect to arbitration clauses: "[T]he law is equally clear that [the plaintiff] cannot be excused from complying with the arbitration provision if [she] simply failed properly to read the contract." *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1016 (6th Cir. 2003); *Burden v. Check into Cash of Kentucky., LLC*, 267 F.3d 483, 492 (6[th] Cir. 2001) (a party signing a contract is presumed to know its contents, even though the arbitration clauses at issue appeared on the reverse side of the pay day loan agreements). Accordingly, plaintiff has failed to demonstrate a genuine issue as to whether the arbitration provision lacked mutuality.

        b.    <u>Consideration</u>

Plaintiff devotes considerable attention to her argument that the arbitration provision does not provide identical reciprocal obligations and, consequently, that there was no exchange of actual, bargained for consideration. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 8-11; *Check$mart's Reply*, at 6. As Check$mart correctly argues, however, the Sixth Circuit has also considered and rejected this position. *Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167 (6th Cir. 1989) (an arbitration provision embedded in a valid contract does not require separate consideration). *See also Glazer v. Lehman Bros., Inc.*, 394 F.3d at 453 (same).

Additionally, this Court notes that, even if separate consideration were required to render the arbitration provision enforceable, it was present in this case. Plaintiff argues that Check$mart's promise to forgo its right to bring suit in court in favor of arbitration is illusory because performance is entirely optional with Check$mart. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 10. However, this is simply incorrect. The arbitration provision at issue in this case provides that both parties exchanged a promise to forgo a lawsuit in favor of arbitration <u>at the option of either party</u>. *Contract*, at 2. Consequently, plaintiff has failed to raise a genuine issue of fact as to whether she and Check$mart exchanged actual, bargained for consideration.

### 3.    *Ohio law*

Plaintiff relies on *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004), for the proposition that the arbitration provision can be rendered unenforceable based on any grounds generally available for the avoidance or invalidation of private contracts under Ohio law. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 11. The Court, however, is not

convinced that *Cooper* is applicable to the issue presented in this case. *Cooper* considered a separate, stand alone arbitration agreement, not an arbitration provision or clause, such as that at issue in this action, that is embedded in a larger substantive contract. The United States Court of Appeals for the Sixth Circuit has held that the validity of an arbitration provision embedded in a larger substantive contract is not subject to state law:

> Plaintiffs also argue that the arbitration agreements are unconscionable and unenforceable as against Ohio public policy. But this Court and the Supreme Court have disagreed, seeing "nothing in the [FAA] indicating that the broad principle of enforceability is subject to any additional limitations of state law." *Ferro Corp. v. Garrison Indus.*, 142 F.3d 926, 932 (6th Cir. 1998) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984)). The FAA governs all aspects of arbitration procedure and preempts inconsistent state law. *See Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996); *Moses H. Cone*, 460 U.S. at 24.

*Stout v. J.D. Byrider*, 228 F.3d 709, 715-16 (6th Cir. 2000). Nevertheless, because the parties have briefed this issue, the Court will address the parties' arguments.

Plaintiff argues that, even if this Court concludes that the arbitration provision is valid, enforcement of the provision would nevertheless be improper because the provision is unconscionable and violates the public policy of Ohio and principles of equity. The Court disagrees.

a.      Unconscionability

The issue of unconscionability under Ohio law is a question of law to be resolved by this Court. *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 157 (Summit County 2004) (citing *Insurance Co. of North Am. v. Automatic Sprinkler Corp.*, 67 Ohio St. 2d 91, 98 (1981)). Under Ohio law, the unconscionabilty doctrine is comprised of two components:

(1) substantive unconscionabilty, *i.e.*, unfair and unreasonable contract terms, and

13

(2) procedural unconscionabilty, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible.

*Both elements must be present to find a contract unconscionable.*

*Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017 (6th Cir. 2005) (emphasis in original) (citing *Jeffrey Mining Prods., L.P. v. Left Fork Mining Co.*, 143 Ohio App.3d 708 (2001) and *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75 (1996)).

<u>(i)</u>      <u>procedural unconscionabilty</u>

Procedural unconscionability involves factors bearing on the parties' relative bargaining position, *e.g.*, age, education, intelligence, business acumen and experience, relative bargaining power, which party drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible and whether there were alternative sources of supply for the goods or services in question. *Collins v. Click Camera & Video*, 86 Ohio App.3d 826 834 (1993). *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App.3d 843, 848 (2005), is on point:

> Appellees each executed an affidavit and attached those affidavits to their brief opposing Appellants' motion to stay proceedings. In those affidavits, Appellees each stated that they were not represented by counsel when they executed the construction contract and that this was their first experience with a construction contract. Appellees further stated that no employee of Gatliff Building Company offered them any information on arbitration or discussed the clause with them. Lastly, Appellees stated that, at the time they executed the agreement, they did not know what arbitration meant.

> Randy Gatliff's own testimony characterizes the construction contract in general and the arbitration clause in particular as adhesive. Black's Law Dictionary (7th Ed. 1999), 318-319, defines an adhesion contract as a "standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who has little choice about the terms." As Gatliff testified in his deposition, he had never modified or removed the arbitration clause contained in his company's standard contract, and would not do business with a consumer who

14

would not accept the language of that clause.  Furthermore, it is undisputed that
Gatliff neither pointed out the arbitration clause nor explained its contents to
Appellees, that Appellees were unrepresented by counsel when they executed the
contract, and that this was the first construction contract that Appellees had
experience with.

In the case *sub judice*, plaintiff argues, as did the plaintiff in *Porpora*, that the arbitration

provision sought to be enforced is procedurally unconscionable because the contract in which it

is contained is an adhesion contract.  *Plaintiff's Memorandum Contra Check$mart's Motion*, at

6-7.  Plaintiff presents evidence that she was not represented by counsel when she executed the

*Contract*, that no employee of Check$mart offered her any information on arbitration or

explained it to her and that, at the time she executed the agreement, she did not know what

arbitration meant.  *Pl. Aff.*, ¶¶ 2-5.  In addition, plaintiff presents evidence that the arbitration

provision was drafted by Check$mart, that Check$mart's employees had no authority to alter or

remove that provision from the *Contract* and that a customer could not obtain a pay day loan

unless she signed the *Contract* which contained the arbitration provision.  *Check$mart*

*Deposition Transcript*, at 14-17.[2]

Accordingly, viewing the facts in the light most favorable to plaintiff, the Court

concludes that she has demonstrated a genuine issue at to whether the arbitration provision was

procedurally unconscionable under Ohio law.

(ii)    substantive unconscionabilty

_____

[2]Deposition of Check$mart's designee, Vice President Pagel Helterbrand.  Doc. No. 69.

15

Substantive unconscionability involves factors relating to the contract terms themselves and whether they are commercially reasonable. *Dorsey*, 113 Ohio App.3d at 80.

Plaintiff argues that the arbitration provision at issue in this case is substantively unconscionable because it requires arbitration in the federal judicial district in which plaintiff resides, which could mean plaintiff might be required to drive to Cincinnati, Dayton or Steubenville, *i.e.,* seats of court within the Southern District of Ohio. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 13. Additionally, plaintiff posits that arbitration under AAA rules costs more than litigation and contends that, because she is currently unemployed, she cannot bear the financial costs of arbitration. *Id.*, at 14. Plaintiff's arguments are unpersuasive.

As Check$mart correctly explains, in *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000), Justice Ginsburg lauded the fee provisions of the AAA:

> Under the AAA's Consumer Arbitration Rules, consumers in small-claim arbitration incur no filing fee and pay only $125 of the total fees charged by the arbitrator. All other fees and costs are to be paid by the business party.

*Id.*, at 95 (Ginsburg, J., concurring).

Moreover, the arbitration provision at issue in this case requires that Check$mart "advance the arbitration fees (including applicable filing fees, hearing fees, and arbitrator's fees)," and provides that the "arbitrator will decide whether we or you will ultimately be responsible for paying any fees in connection with the arbitration, taking into account whether you are financially able to pay such fees." *Id.*

As a sister district court has noted, it is indicative of the validity of an arbitration provision when, under the provision, a "claimant is not automatically obligated to pay a share of the arbitration costs." *Shadeh v. Circuit City Stores, Inc.*, 334 F. Supp.2d 938, 943 (W.D. Ky.

16

2004).  "The 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."  *Cooper v. MRM Inv. Co.*, 367 F.3d at 510 (considering a separate contract to arbitrate, the court found the risk that the plaintiff would be required to pay for the arbitration too speculative when the agreement was silent on the cost).

Furthermore, the United States Court of Appeals has rejected plaintiff's argument that it is inherently unfair to require her arbitrate in the Southern District of Ohio.  In *Management Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851 (6th Cir. 1997), the court recognized that state law cannot impose burdens on the forum selected by an arbitration agreement:

> The Supreme Court has held that, under Section 2 [of the FAA], the forum expectations of parties to an arbitration agreement as reflected in a written agreement may not be upset by state law.  A state [law], in which out-of-state forum-selection provisions are deemed inherently unconscionable, would be especially problematic in view of the Supreme Court's holding that a *court* "may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot."

*Id.*, at 856 (emphasis in original).

Accordingly, even when viewing the facts in the light most favorable to plaintiff, the Court concludes that she has not demonstrated a genuine issue at to whether the arbitration provision at issue in this case is substantively unconscionable.  Because both procedural and substantive unconscionability are required before a contract provision can be rendered invalid under Ohio law based on unconscionability, *see Scovill, supra,* 425 F.3d at 1017, plaintiff's contention in this regard cannot prevail.

> b.    Class action remedy waivers and Ohio public policy

Plaintiff also argues that the class allegations presented in this action foreclose enforcement of the arbitration agreement. *Plaintiff's Memorandum Contra Check$mart's Motion*, at 18. The arbitration agreement states in relevant part:

5.      WAIVER OF RIGHTS: THE PARTIES UNDERSTAND THAT, IF ARBITRATION IS
        CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM:

. . . .

        (d)      THERE SHALL BE NO AUTHORITY OF ANY CLAIMS TO BE
                 ARBITRATED ON A CLASS ACTION BASIS. AN ARBITRATION CAN
                 ONLY DECIDE OUR OR YOUR CLAIM AND MAY NOT CONSOLIDATE
                 OR JOIN THE CLAIMS OF OTHER PERSONS WHO HAVE SIMILAR
                 CLAIMS.

*Contract*, at 2.

Plaintiff argues, without citation to authority:

An arbitrator's authority may not exceed that which the parties deigned to give her. Check$mart's arbitration clause explicitly withholds arbitral authority over claims asserted on a class basis. All the claims in this case are asserted on a class basis. No claims are asserted solely for or only by Ms. Passa, personally. *Hence, there are no claims over which Check$mart's adhesion contract delegated any arbitral authority.*

*Plaintiff's Memorandum Contra Check$mart's Motion*, at 18 (emphasis in original).

The Court disagrees. This case was brought by plaintiff "on behalf of herself and a class of all others similarly situated." *Amended Complaint*, ¶3. The *Amended Complaint* also seeks "actual and statutory demages" for "plaintiff and the subclass." *Id.*, at ¶90. *See also* ¶100. Plaintiff clearly seeks to pursue her own claims in this action arising out of her dealings with Check$mart.

Alternatively, plaintiff argues that, should the Court interpret the arbitration provision to abrogate plaintiff's right to pursue remedies on a class basis, the agreement is unenforceable as a matter of public policy. Again, the Court disagrees. Agreements to waive class remedies are

18

enforceable. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (holding that, through an agreement to arbitrate, one may waive his right to pursue class-wide relief even though the Age Discrimination in Employment Act expressly contemplates class remedies). Although this issue has not been addressed by the Sixth Circuit, other circuits and a sister district court in this circuit have characterized as enforceable arbitration agreements that include class action waivers. *See Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005) (arbitration agreements precluding class wide relief are valid and enforceable); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294 (5th Cir. 2004) (the inability to proceed to arbitration on behalf of a class does not deprive plaintiffs of substantive rights under the Fair Labor Standards Act); *Livingston v. Assocs. Fin. Inc.*, 339 F.3d 553 (7th Cir. 2003) (arbitration agreement which expressly prohibits class actions was valid against Truth in Lending Act claimants seeking class certification); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002) (enforcing an arbitration clause that prohibited class actions and holding that public policy is not violated by allowing for waiver of class action remedies of consumer protection claims); *Copeland v. Katz*, 2005 U.S. Dist. LEXIS 31042, *11-12 (E.D. Mich. November 28, 2005) (although this issue has not been addressed by the Sixth Circuit, other circuits have found that arbitration agreements precluding class action relief are valid and enforceable.)

    This argument cannot prevail.

        c.    Implied covenant of good faith and fair dealing and principles of equity

    Plaintiff contends that, because Check$mart uses the arbitration provision "solely as a litigation weapon," it is acting in bad faith and in violation of the covenant of good faith and fair dealing required of every contract. *Plaintiff's Memorandum Contra Check$mart's Motion*, at

21.  Specifically, plaintiff offers evidence that Check$mart never, or rarely, elects arbitration when it seeks to resolve a remedy with a customer but, instead, elects to initiate litigation. Check$mart responds that, even if true, such evidence does not establish a violation of principles of equity sufficient to vitiate the arbitration clause at issue in this case.  The Court agrees.

A sister district court case is directly on point.  In *Beauchamp v. Great W. Life Assurance Co.*, 918 F. Supp. 1091 (W.D. Mich 1996), the plaintiff argued that because the defendant chose to litigate its disputes with its employees, it could not elect arbitration when she brought a claim against it in federal court.  The *Beauchamp* court disagreed:

> Plaintiff also argues that defendants may not enforce the arbitration clause in the U-4 form because it has not used it to compel arbitration in other employment discrimination cases.  This argument is spurious, at best.
>
> While it is true that a party may be estopped from making contradictory statements of fact within a single proceeding, or even in separate proceedings, or may be estopped from taking contradictory positions in separate proceedings, there are no such contradictory statements of facts or positions in the present case. The only statement of fact being made by the defendants here is that plaintiff signed the U-4 form.  There is no contradiction created by defendants' motion to compel arbitration in this case, even though defendants have not so moved in other, similar cases.  There is no requirement that defendants must move to compel arbitration in every employment discrimination case in which an employee signed a U-4 form.

*Id.*, at 1099 (internal citations omitted).

The Court finds *Beauchamp* persuasive and concludes that plaintiff's equitable estoppel argument is without merit.

In sum, the Court concludes that plaintiff has raised no genuine issue of material fact as to the validity of the arbitration provision.  The next inquiry is whether the dispute between plaintiff and Check$mart falls within the scope of the arbitration provision.  *See Stout*, 228 F.3d at 714.

20

**B.       Scope of the Arbitration Provision**

Plaintiff frames the dispute presented in this case as "Check$mart's fraudulent, unconstitutional, illegal, and tortious filing of criminal charges with the City's fraudulent check recovery office as a method of collecting unpaid checks Check$mart knew were not fraudulently issued." *Plaintiff's Memorandum Contra Check$mart's Motion*, at 24 (citing to *Pl. Aff.*, at ¶ 7 and *Amended Complaint*).

> District courts have the authority to decide whether an issue is within the scope of an arbitration agreement. *Fazio*, 340 F.3d at 395. "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." *Id.* If it could, then it may fall outside the scope of the arbitration agreement.
>
> When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986). Where the arbitration clause is broad, only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators. *Id.*

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003). Arbitration provisions that require arbitration of any dispute "arising out of" the relationship or agreements between the parties are broad. *Id.*, at 577 ("We have previously held, however, that an arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.'" *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir.1983)). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24-25).

The arbitration provision at issue in the instant action is quite broad, providing in bold, capital letters that "any and all disputes arising out of or relating to this agreement" or any prior agreements, can at the election of plaintiff or Check$mart or any third-party involved be "resolved by binding arbitration."  *Contract*, at 2.

> Scope: Any claim, dispute, controversy (whether in contract, tort, or otherwise, whether pre-existing, present, or future, and including statutory, common law, intentional tort and equitable claims) arising out of or relating to (i) this Agreement; (ii) any prior Agreements between you and us (iii) your application for this or any prior transaction with us; (iv) advertisements, promotions or oral or written statements relating to your Agreement with us or the relationships which result therefrom (including, th the full extent permitted by applicable law, relationships with third-parties who are not signatories to the Agreements or this Arbitration Provision); or (v) the validity, enforceablity, or scope of this Arbitration Provision or the Agreements (collectively, "Claim") shall be resolved, upon the election of you or us or said third-parties, by binding arbitration pursuant to this Arbitration Provision.

*Contract*, at 2.

Check$mart argues that the dispute between it and plaintiff  "most surely 'aris[es] out of or relat[es] to' the 'Agreement,' 'written statements relating to your Agreement with us,' and/or 'the relationships which result therefrom.'"  *Check$mart's Reply*, at 8 (citing *Contract*, at 2). Contrarily, plaintiff argues that subsections (i) through (v) in the quoted paragraph "significantly qualify and narrow the broad, general language with which th[e] paragraph begins."  *Plaintiff's Memorandum Contra Check$mart's Motion*, at 24.  Plaintiff contends:

> The fraudulent statements Check$mart signed to initiate [participation in the Check Resolution Program] are not an Agreement, an application for an Agreement, or an advertisement or promotion resulting in an Agreement.

*Id.*, at 25.

Plaintiff's argument is not completely without merit; however, plaintiff's argument misses the mark.  This Court must conclude that the parties' dispute falls within the scope of the

arbitration provision unless "'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute'" and "any doubts must be resolved in favor of arbitration." *Highlands Wellmont Health Network, Inc.*, 394 F.3d at 452.

The arbitration provision at issue in this case simply does not contain an "express provision excluding" the dispute between these parties nor has plaintiff submitted "the most forceful evidence of a purpose to exclude the claim from arbitration." *Id.* This Court cannot say with "positive assurance" that the arbitration provision excludes the dispute between plaintiff and Check$mart.

### C.    Congress Did Not Intend Plaintiff's Claims To Be Nonarbitrable

The third determination to be made by the Court is whether Congress intended plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA") and Section 1983 to be nonarbitrable. *See Stout*, 228 F.3d at 714. Neither party has addressed this issue, so the Court will proceed without benefit of argument from the parties.

The United States Supreme Court "holds that 'having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Cooper*, 367 F.3d at 509 (citing *Gilmer*, 500 U.S. at 26)).

Plaintiff's claims under the FDCPA present no barrier to arbitration in this case, as courts have found FDCPA claims to be appropriate for arbitration. *See Fedotov v. Peter T. Roach & Assoc.*, No. 03 Civ. 8823, 2006 U.S. Dist. LEXIS 11422, *10-11 (S.D. N.Y. 2006) (granting defendants' motion to compel arbitration of FDCPA claim); *Smith v. Steinkamp*, No. IP01-1290, 2002 WL 1364161 (S.D. Ind. May 22, 2002), *aff'd*, 318 F.3d 775 (7th Cir. 2003) (same); *Goetsch*

23

*v. Shell Oil Co.*, 197 F.R.D. 574 (W.D.N.C. 2000) (same); *In re Taylor*, 260 B.R. 548 (Bankr. M.D. Fla. 2000) (same).

With regard to plaintiff's claims under Section 1983, however, the law is not quite so clear.  Because the Civil Rights Act of 1871 pre-dates the FAA, an analysis of the earlier statute's legislative history is unlikely to reveal a congressional intent to preclude waiver of judicial remedies in reference to arbitration.

Although the United States Court of Appeals for the Sixth Circuit and the United States Supreme Court are silent on this precise issue, other decisions of the Supreme Court are instructive.  *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (enforcing an agreement to arbitrate claims arising under the Sherman Act, 15 U.S.C. §§ 1-7); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987) (enforcing an agreement to arbitrate claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and claims arising under the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (enforcing an agreement to arbitrate claims arising under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2)); *Gilmer*, 500 U.S. 20 (enforcing an agreement to arbitration claims arising under the ADEA); *Green Tree Financial Corp.- Ala.*, 531 U.S. 79 (holding that arbitration is a suitable avenue for resolution of claims under the Truth in Lending Act).  Moreover, the law is clear that doubts regarding arbitrability should be resolved in favor of arbitration.  *Glazer*, 394 F.3d at 451 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25).  *See also McGill v. Rural/Metro Corp.*, No. 2:00CV192, 2001 U.S.

Dist. LEXIS 4833, *10 (N.D. Miss. 2001) (granting defendants' motion to compel arbitration of Section 1983 claim).

Because it is not clear that Congress intended to exclude plaintiff's §1983 claims from arbitration, the Court is constrained to resolve any doubt in this regard in favor of arbitration.

### D. These Proceedings Will Be Stayed as to Check$mart Pending Arbitration

The fourth, and final, determination the Court is required to make is whether these proceedings should be stayed pending arbitration. *See Stout*, 228 F.3d at 714. The Court has determined that all plaintiff's claims against Check$mart must be referred to arbitration. The issue therefore arises whether plaintiff's claims against Check$mart should be dismissed or stayed. In light of the class action allegations and of this Court's determination that plaintiff has standing to pursue class claims against Quick Cash and Cash Till Payday, Doc. No. 80, the Court will stay -- not dismiss -- these proceedings even as against Check$mart.

## IV. CASH TILL PAYDAY'S MOTION TO COMPEL ARBITRATION AND/OR STAY

Cash Till Payday and plaintiff both agree that Cash Till Payday's motion is not ripe for review. *Plaintiff's Memorandum Contra Cash Till Payday's Motion*, at 2 ("In actuality, most of [Cash Till] Payday's motion focuses on why the Court should consider staying the entirety of this case if Check$mart's motion to compel is granted. That question is speculative, not ripe for review, and to the extent it is now addressed by [Cash Till] Payday, it must be denied without prejudice."); *Cash Till Payday's Motion to Compel and/or Stay*, at 1 ("There is a question, however, as to whether this action should be stayed pending arbitration. However, that issue would need to be raised by motion and will not be ripe until and/or if this Court orders arbitration."). The Court agrees.

The Court invites briefing by the parties of this issue and will set a briefing schedule in a status conference to be scheduled forthwith.

**WHEREUPON** *Check$mart's Motion to Stay and Compel Arbitration*, Doc. No. 46, is **GRANTED** and *Cash Till Payday's Motion to Stay and/or Compel Arbitration*, Doc. No. 62, is **DENIED** without prejudice to refiling subsequent to the status conference that will be scheduled forthwith.


<u>March 28, 2006</u>                          <u>        *s/Norah McCann King*        </u>
Date                                                  Norah Mᶜcann King
                                                  United States Magistrate Judge

26