IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TRACY PASSA, on behalf of herself
and all others similarly situated,**

        Plaintiff,

  vs.                                      Civil Action 2:03-CV-81
                                              MAGISTRATE JUDGE KING

**CITY OF COLUMBUS, et al.,**

        Defendants.

## OPINION AND ORDER

Plaintiff Tracy Passa ("plaintiff"), acting on behalf of herself and a putative class of plaintiffs, alleges that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, 42 U.S.C. §1983, the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code ("O.R.C.") § 1345.01 *et seq.*, and other provisions of Ohio's statutory and common law based on their participation in the City of Columbus' ("City") Check Resolution Program. On June 3, 2005, plaintiff filed the *Amended Complaint*, Doc. No. 33, naming as defendants the City, Buckeye Check-Cashing, Inc. and BCCI Management Co. dba Check$mart ("Check$mart"), Quick Cash Advance, Inc. dba Quick Cash USA ("Quick Cash") and Cash Till Payday, Ltd. dba Always Payday ("Always Payday") (the latter four referred to, collectively, as "the payday lenders"). *Amended Complaint*, ¶¶ 84-118.

With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Plaintiff's Renewed Supplemental Motion for Certification of Plaintiff Class and Subclass as to Claims Against the City of Columbus*, Doc. No. 149 ("*Plaintiff's Motion to Certify*") and *Motion of Defendant, City of Columbus, to Dismiss Plaintiff's Claims*,

Doc. No. 167 ("*City's Motion to Dismiss*"). For the reasons that follow, *Plaintiff's Motion to Certify* is **GRANTED** and the *City's Motion to Dismiss* is **DENIED**.

I. **FACTS AND RELEVANT PROCEDURAL BACKGROUND**

Plaintiff, a resident of Noble County, Ohio, obtained several "pay day" loans from Check$mart, a business located in Zanesville, Ohio, and licensed to make such loans pursuant to O.R.C. § 1315.35 *et seq*. *Amended Complaint*, ¶¶ 18-22, 57. Plaintiff issued post-dated checks to serve as collateral for those loans. *Id*. at ¶ 23, 59. For one of those loans, plaintiff and Check$mart executed a contract dated April 24, 2002 ("*Contract*"); that contract provided that Check$mart would loan $400.00 to plaintiff and that plaintiff agreed to pay to Check$mart $460.00 on May 8, 2002. *Id*. at ¶¶ 26, 63; *Deferred Deposit, Early Deposit Clause and Disclosure Agreement*, Doc. No. 146-15. Plaintiff informed Check$mart that she could not repay that loan and that the post-dated check she had given it as collateral would be dishonored if negotiated. *Amended Complaint*, ¶ 65. After plaintiff failed to repay the May 8, 2002, loan, Check$mart attempted to negotiate the post-dated check. *Id*. at ¶¶ 29, 65. Plaintiff's checking account contained insufficient funds to cover the check. *Id*. at ¶¶ 65, 66.

At the time, the City maintained a Check Resolution Program, through the Dispute Resolution Unit of the City Attorney's Office. *Id*. ¶ 26. Under the program, merchants eligible to participate in the Check Resolution Program filed a certified case submission application with the prosecutor's office in Columbus, Ohio. *Id*. at ¶¶ 27-32. The

case submission was automatically accepted and a hearing date was docketed. *Id*. at ¶ 36. Notices were then mailed from the prosecutor's office to the alleged delinquent customer requesting that the customer appear at the Franklin County Municipal Court to resolve a complaint made against the customer. *Id*.

On July 11, 2002, the City sent plaintiff a letter indicating that Check$mart had scheduled a mediation through the Check Resolution Program, to be held on July 31, 2002, at 4:30 p.m., in an attempt to resolve the dispute related to the May 8, 2002, payday loan. *Id*. at ¶¶ 76-78 and Exhibit 9, p. 1, attached thereto. Plaintiff did not attend this mediation. *Id*. at ¶ 80. On August 6, 2002, the City sent a second notice to plaintiff, indicating that another mediation was to be held on August 14, 2002. *Id*. and Exhibit 9, p. 3, attached thereto. Plaintiff alleges that, by sending these notices, the City violated the FDCPA, the OCSPA, Section 1983 and the common law of Ohio. *Id*. at ¶¶ 84-118. Plaintiff alleges that the City illegally "lent Check$mart its official status and authority to assist Check$mart in collecting this consumer payday loan . . . ." *Id*. at ¶ 76. Also, plaintiff alleges that Quick Cash and Always Payday engaged in similar misconduct with their customers. *Id*. at ¶¶ 7, 8, 84-118. Plaintiff contends that the City made at least one communication to approximately 20,000 persons at the requests of Check$mart, Quick Cash and Always Payday. *Id*. at ¶ 7.

On July 24, 2003, this Court granted the City's motion to dismiss for failure to state a claim for relief. *Opinion and Order,* Doc. No. 16. However, that judgment was reversed on appeal. *Passa v. City of Columbus,* Case No. 03-4111 (6th Cir. February 16, 2005); *see also* Doc.

No. 21. Thereafter, plaintiff amended the complaint and joined the payday lenders as defendants. Doc. No. 33. The Court denied the motions to dismiss challenging plaintiff's standing to assert claims against the payday lenders who had no contractual relationship with plaintiff. *Opinion and Order,* Doc. No. 80.

On March 6, 2007, the Court denied the City's first motion for summary judgment in which the City argued that it does not qualify as a "debt collector" under the FDCPA or a "supplier" under the OCSPA. The Court reasoned that, in light of the City's own description of its Check Resolution Program,[1] genuine issues of material fact existed regarding the City's status under those statutes. *Opinion and Order*, Doc. No. 118. The Court ultimately determined that the City did not qualify for an exclusion to the definition of "debt collector" under 15 U.S.C. § 1692a(6)(c). *Opinion and Order*, Doc. No. 141.

The Court also concluded that plaintiff's individual claims against Check$mart were subject to arbitration in accordance with her contract with Check$mart, *Opinion and Order*, Doc. No. 83, and those claims were therefore ordered to arbitration. *Id.* The arbitrator, after discovery, briefing, a hearing and supplemental submissions, issued a decision on June 18, 2007. *Award of Arbitrator* ("June 18, 2007 Arbitration Award"), attached as Exhibit 1 to *Plaintiff Tracy Passa's Reply in Support of Plaintiff's Motion to Certify a Class of Plaintiffs as to the Claims Against Defendants the City of Columbus and the City Prosecutor's Office*, Doc. No. 163 ("*Plaintiff's Reply in*

---

[1] The City's website during the relevant time period contained the following language: "The Check Resolution Program assists in the collection of money unpaid to merchants due to the passing of bad checks." *See Opinion and Order,* p.6, Doc. No. 118.

*Support of Motion to Certify*"). As an initial matter, the arbitrator identified plaintiff as the claimant and "Buckeye Check-Cashing, Inc. and BCCI Management Co., d/b/a Check$mart" as the respondents. *Id.*, p.1. In considering whether plaintiff had established a FDCPA violation, the arbitrator held that respondents were not, by virtue of their own collection efforts, "debt collectors" within the meaning of the statute. *Id.,* pp. 3-4. The arbitrator also concluded that the City had not acted as a "debt collector" on behalf of the respondents:

> The Check Resolution Program is a mediation program set up by the Franklin County Court System, under the encouragement of the Supreme Court, to facilitate the resolution of claims relating to "bad checks." The Program was not designed or established for Respondents or like businesses but to assist merchants in collecting checks that have been dishonored. The Program cannot be considered an agent of Respondents. It is simply a function of the Franklin County Municipal Court open to all citizens.
>
> \*          \*          \*          \*
>
> Under these circumstances, I can not find any basis for the application of the FDCPA to Respondents or their activities and therefore Claimant's causes of action under FDCPA must be denied and dismissed with prejudice.

*Id.*, p.4. The arbitrator ultimately dismissed with prejudice all of plaintiff's claims submitted to arbitration except the claim under the OCSPA alleging a violation of O.R.C. § 1315.41. Plaintiff's request for rescission was granted conditional upon her return of the $400.00 advanced to her. *Id.*, p.6.

On March 11, 2008, this Court denied plaintiff's request to modify, vacate or correct the June 18, 2007 Arbitration Award, and confirmed the award. *Opinion and Order*, Doc. No. 148.[2]   The Court

---

[2] Plaintiff filed a notice of appeal from that decision. *Notice of Appeal,* Doc. No. 153. Little progress was made in the litigation during the nearly one year that plaintiff's appeal was pending. Plaintiff eventually

5

also provided plaintiff the opportunity to file a supplemental motion to certify. *Id.*

Thereafter, plaintiff filed renewed supplemental motions to certify in connection with her claims against the City and the payday lending defendants.[3] Doc. Nos. 149, 150. The City opposes *Plaintiff's Motion to Certify* and moves to dismiss plaintiff's claims asserted against it. *Defendant City of Columbus' Memorandum Contra to Plaintiff's Renewed Supplemental Motion for Certification of Plaintiff Class and Subclass as to Claims Against the City of Columbus*, Doc. No. 155 ("*City's Memo. Contra Plaintiff's Motion to Certify*"); *City's Motion to Dismiss*. The Court will address each motion in turn.

## II. *Plaintiff's Motion to Certify*

Plaintiff contends that class certification in connection with her claims against the City is appropriate because she meets all the necessary requirements for class certification under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3). *Plaintiff's Motion to Certify*, pp. 4-14. The City opposes plaintiff's request, arguing that plaintiff lacks standing as a class representative because her individual claims against the City were resolved through arbitration. *City's Memo. Contra Plaintiff's Motion to Certify*.

### A. Class Definition

Although the definition of a class is unique to a particular

---

dismissed her appeal. *See Order of the United States Court of Appeals,* Doc. No. 159.

[3]Plaintiff had previously filed motions to certify. Doc. Nos. 2, 108. This *Opinion and Order* addresses only plaintiff's renewed supplemental motion to certify her claims against the City, Doc. No. 149.

6

case, every class definition should include at least: (1) a specification of a particular group at a particular time frame and location who were harmed in a particular way; and (2) a method of definition that allows the court to ascertain its membership in some objective manner. *See*, *e.g.*, *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004). Here, plaintiff seeks to certify a plaintiff class, in connection with claims against the City, that consists of

> all persons who at any time on or after January 1, 2001 were or will be the subject of a debt collection communication from and through the City of Columbus' Check Resolution Program in connection with an attempt to obtain payment of a "payday" loan allegedly owed Check$mart, Quick Cash USA, or Always Payday under a loan agreement governed by R.C. 1315.35 - 1315.44.

*Plaintiff's Motion to Certify*, p. 2. Plaintiff also seeks to certify a subclass, in connection with the FDCPA claim, consisting of "all persons subjected to such action(s) on or after January 1, 2002." *Id*.

The Court does not find, nor does the City argue, that plaintiff's proposed class definition is overly broad or vague. Plaintiff has specifically limited the proposed class to individuals who received, or who will receive, a communication from the City's Check Resolution Program regarding payment of a loan owed to one of the payday lenders. Plaintiff herself has received such a communication. *See*, *e.g.*, Exhibit 9 attached to *Amended Complaint*. Accordingly, the Court concludes that plaintiff has proposed a properly defined class and subclass, of which she is a member.

**B. Rule 23(a) and (b) Standard**

The trial court maintains substantial discretion in determining whether or not to certify a class action. *See*, *e.g.*, *Reeb v. Ohio*

7

*Dep't of Rehab. & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 643 (6th Cir. 2006). However, in exercising this discretion, the trial court may not consider the merits of a class representative's underlying claim, but must accept as true the allegations in the complaint. *Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. Appx. 550, at *555 (6th Cir. Nov. 18, 2003) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).

"In order to obtain class certification, [a] plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. GMAC*, 296 F.3d 443, 446 (6th Cir. 2002). Fed. R. Civ. P. 23(a) specifically provides that a class member or members may sue on behalf of a class if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The trial court must conduct a "rigorous analysis" in determining whether these requirements have been met. *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). The party seeking class certification bears the burden of proof. *See*, *e.g.*, *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005).

If a plaintiff meets all of the Rule 23(a) requisites, it must

then meet one of the three types of class actions recognized in Rule 23(b) in order to maintain a class action. Fed. R. Civ. P. 23(b). *See also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*). In the instant case, plaintiff seeks to proceed under Fed. R. Civ. P. 23(b)(2) and (b)(3).

The Court will address separately each of these requirements under Fed. R. Civ. P. 23.

**C.   Rule 23(a) Requirements**

**1.   Numerosity**

A plaintiff satisfies the numerosity requirement when the putative class members are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[T]here is no strict numerical test for determining impracticability of joinder." *Golden*, 404 F.3d at 965 (quoting *Am. Med. Sys., Inc.*, 75 F.3d at 1069) (internal quotation marks omitted)).

Here, plaintiff contends that she has met this requirement. Specifically, plaintiff points to the hundreds or thousands of communications sent by the City to putative class and subclass members "on behalf of" each of the payday lenders regarding the City's Check Resolution Program. *Plaintiff's Motion to Certify*, p. 6 (citing *Deposition of Barbara Williams*, Doc. No. 106 ("*Williams Depo.*") and Exhibits 7 and 8, attached thereto).

The City does not dispute that plaintiff has met this requirement. Accordingly, the Court finds that the Rule 23(a)(1) requirements have been met.

**2.   Commonality**

Only if "there are questions of law or fact common to the class" will the commonality requirement be met. Fed. R. Civ. P. 23(a)(2). Although Rule 23(a)(2) refers to "questions" of law or fact, the United States Court of Appeals for the Sixth Circuit has clarified "that there need only be one question common to the class." *Sprague*, 133 F.3d at 397 (citing *American Med. Sys.*, 75 F.3d at 1080). However, not every common question will suffice; the question must be "a common issue the resolution of which will advance the litigation." *Id*. Finally, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009) (quoting *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (internal quotation marks omitted)).

In the instant case, plaintiff argues that common questions of law and fact include

> the practices and procedures employed by the City of Columbus' Check Resolution Program to help payday lenders collect debts owed under payday loan transactions; whether by those practices and procedures the City regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another; and the extent to which the City's activities were subject to, exempted from, and/or in violation of the [FDCPA, CSPA or the Ohio Corrupt Practices Act.]

*Plaintiff's Motion to Certify*, pp. 7-8. The City asserts that there is no question of fact or law common to the class because plaintiff's claims have been resolved against her.

Here, plaintiff's proposed certification of the class and

subclass would require that each member have received a communication⁴
regarding the Check Resolution Program from the City. Stated
differently, the factual and legal questions surrounding such
communications are common to the proposed class and subclass and they
are the focus of this litigation. *See Kelly v. Montgomery Lynch &
Assocs.*, No. 1:07-CV-919, 2007 U.S. Dist. LEXIS 93656, at *9 (S.D.
Ohio Dec. 19, 2007) (stating that putative class members all received
a letter and "therefore, all share common questions of fact. Further,
the members also share common legal concerns because the standard form
letter allegedly violates the OCSPA and the FDCPA."); *Mann v. Acclaim
Fin. Servs.*, 232 F.R.D. 278, 284 (S.D. Ohio 2003) (finding the
commonality requirement satisfied where putative class members
received letter that allegedly violated the FDCPA).

The City argues, however, that plaintiff lacks standing -- or,
stated differently, does not have a claim in common with the putative
classes -- because she no longer has a claim against the City. *City's
Memo. Contra Plaintiff's Motion to Certify*, pp. 1-5 (citing June 18,
2007 Arbitration Award). The City also contends that the doctrine of
*res judicata* precludes plaintiff from further litigating her claims
because this Court affirmed the June 18, 2007 Arbitration Award. *Id.*;
*City's Motion to Dismiss*.⁵ Plaintiff disagrees, arguing that her
claims against the City were not fairly and fully litigated in
arbitration and that the arbitrator did not find, and was without

---

⁴There is evidence before the Court that many, if not all, of the
communications were the same form document. *See Williams Depo.*, pp. 55-58.

⁵Because the City also reiterates this argument in its motion to
dismiss, the Court references, as appropriate, the City's motion to dismiss
when considering *Plaintiff's Motion for Certification*.

11

jurisdiction to find, that the City was not a debt collector.

Plaintiff's arguments are well-taken. This Court ordered to arbitration only plaintiff's individual claims against Check$mart. *Opinion and Order*, Doc. No. 83. In the course of resolving plaintiff's claims based on the FDCPA, OSCPA and Check Cashing Business Act, O.R.C. § 1315.41, against Check$mart, the arbitrator stated that "[t]he [City's Check Resolution] Program cannot be considered an agent of Respondents [Check$mart]." June 18, 2007 Arbitration Award, p. 4. The City reads into this statement a conclusion by the arbitrator that the City is not a debt collector and did not violate the FDCPA. However, the arbitrator's conclusion as to the relationship between the City and Check$mart is not tantamount to a conclusion that the City itself is not a debt collector within the meaning of the relevant statutes. More significantly, and as plaintiff points out, the arbitrator's resolution of plaintiff's claims against Check$mart did not require such a determination. Although the City insists that plaintiff's claims against it were fully litigated in arbitration, the arbitrator's actual decision cannot stand for that assertion.

This is particularly true where, as here, the Court referred only plaintiff's claims against Check$mart to arbitration. *Opinion and Order*, Doc. No. 83. Even the arbitrator recognized that the arbitration was designed to resolve only the dispute between plaintiff and Check$mart. *See* June 18, 2007 Arbitration Award, pp. 1, 6 (identifying the parties to the arbitration and assessing the costs of arbitration against Check$mart). Accordingly, to the extent that the arbitrator purported to comment on or even resolve plaintiff's claims

12

against the City, the statements of the arbitrator amount to nothing more than non-binding dicta. *See*, *e.g.*, *Williams v. Anderson*, 460 F.3d 789, 811 (6th Cir. 2006) (holding that dictum is not binding precedent); *United States v. Swanson*, 341 F.3d 524, 530 (6th Cir. 2003) ("[T]his holding might be considered dicta in that it was not necessary to the determination of the issue on appeal.").

The City argues that the arbitrator's opinions on the claims against the City were not mere dicta because plaintiff presented, at the arbitration, evidence and arguments regarding the FDCPA. *See City's Motion to Dismiss.* This argument fails to explain how, even with the presentation of evidence, a finding as to the City was necessary to the resolution of plaintiff's claims against Check$mart -- which were, after all, the only claims properly before the arbitrator.

Equally unavailing is the City's contention that this Court has already "determined" that the arbitrator correctly concluded that the City was not acting as a debt collector. *The City's Motion to Dismiss; Reply of Defendant City of Columbus to Plaintiff Tracy Passa's Response in Opposition to Motion to Dismiss of Defendant City of Columbus*, Doc. No. 179 ("*City's Reply in Support of Motion to Dismiss*"). In making this argument, the City relies on the Court's decision adopting and affirming the June 18, 2007 Arbitration Award. *Id*. (citing *Opinion and Order*, Doc. No. 138, pp. 36-37). However, that decision addressed only the arbitrator's resolution of the claims asserted against Check$mart, which were the only claims before the arbitrator. *See*, *e.g.*, *Opinion and Order*, pp. 36-42. Therefore, when the Court confirmed the arbitrator's award "in its entirety," *id*. at

13

43, the Court confirmed only the resolution of plaintiff's claims against Check$mart. Accordingly, the Court does not make a "contrary" ruling, as the City alleges, when the Court now clarifies that the arbitrator did not resolve plaintiff's claims against the City.

The Court also rejects the City's arguments that the doctrine of *res judicata* precludes plaintiff from now litigating her claims against the City. *City's Memo. Contra Plaintiff's Motion to Certify*, pp. 2-4. The term *res judicata* refers to the doctrines of issue preclusion and claim preclusion. *Taylor v. Sturgell*, __ U.S. __, 128 S. Ct. 2161, 2171 (2008). The United States Supreme Court distinguishes these doctrines: "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Issue preclusion, on the other hand, bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (quoting *New Hampshire*, 532 U.S. 748–49).

Although the City utilizes the term *res judicata*, the Court presumes that the City actually intends to refer to the doctrine of issue preclusion when arguing that plaintiff's claims against it are barred. *See City's Memo. Contra Plaintiff's Motion to Certify*, pp. 2-4. However, as discussed *supra*, plaintiff's claims against the City were never submitted to the arbitrator for resolution and therefore could not have been fully litigated in arbitration. The arbitrator's statement, to the extent that it may suggest that the City is not

14

properly characterized as a debt collector, was not necessary to final judgment on plaintiff's claims against Check$mart. It follows that the doctrine of issue preclusion does not bar litigation of plaintiff's claims against the City.

Because plaintiff has shown that there are questions common to the class, the Court concludes that the commonality requirement of Rule 23 has been satisfied. *See Sprague*, 133 F.3d at 397. *See also Ross*, 257 F.R.D. at 442; *Vines v. Sands*, 188 F.R.D. 302, 304 (N.D. Ill. 1999) (stating that "the commonality requirement is easily satisfied in this case, for the claims involve the same form letter sent by [the defendant collection agency] to each class member, and the same question of law under the FDCPA").

### 3. Typicality

Under Rule 23(a), the plaintiff must also demonstrate that the class representative's claims and defenses "are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). More specifically,

> [t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague*, 133 F.3d at 399 (quoting *Am. Med. Sys.*, 75 F.3d at 1082).

Plaintiff contends that her claims are typical of the proposed class and subclass because she was subjected to the same practices, *i.e.*, communication from the City regarding an alleged debt owed to the payday lenders, suffered the same violations of legal rights and

15

raises the same legal and remedial theories of relief against the City. The City does not argue that plaintiff's claims are not typical of the proposed class and subclass. Therefore, the Court concludes that the typicality requirement of Rule 23(a)(3) has been met. *See*, *e.g.*, *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 538 (S.D. Ohio 1998) (finding that typicality requirement was met where, *inter alia*, "the claims appear to arise from the same practices or course of conduct by the defendant").

### 4. Adequacy

Rule 23 also requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must consider two criteria when determining whether this requirement has been met: "(1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. GMC*, 532 F.2d 511, 525 (6th Cir. 1976) (citation omitted).

When determining whether or not the first criterion has been met, *i.e.*, whether the representative has common interests with unnamed members of the class, three factors should be considered: First, "whether the representative was a member of the class;" second, "the nature and extent of the named party's stake in the outcome;" and third, the named party's "familiarity with the conditions he seeks to challenge on behalf of the class." *Mayo v. Sears*, *Roebuck & Co.*, 148 F.R.D. 576, 581 (S.D. Ohio 1993) (citing *Bowen v. Gen. Motors Corp.*, 542 F. Supp. 94, 99 (N.D. Ohio 1981)).

Here, plaintiff contends that she is a member of the proposed

16

class and subclass without a demonstrable conflict of interest. She further asserts that she retains a personal stake in this litigation. Plaintiff's arguments are well-taken. To the extent that the City's arguments as to plaintiff's standing are construed as challenging plaintiff's ability to serve as an adequate class representative, these arguments have been considered *supra* and rejected. Plaintiff therefore has standing to represent the proposed class and subclass because her claims against the City remain unresolved. Accordingly, the plaintiff has an interest in this litigation and is an adequate class representative.

The City does not argue that the second criterion, *i.e.,* that plaintiff is represented by qualified counsel, is not met. Accordingly, the Court concludes that the requirements of Rule 23(a) have been met.

**E.   Rule 23(b)(2) Requirements**

Having found that Rule 23(a) has been satisfied, the Court now turns to the plaintiff's argument that she has met the requirements of Rule 23(b)(2).[6] Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

---

[6]In so arguing, plaintiff states that she does not seek certification of the FDCPA claims of the subclass under Rule 23(b)(2) "because the FDCPA statutory cause of action does not allow for any declaratory or equitable relief." *Plaintiff's Motion to Certify*, p. 11. Instead, she asserts that declaratory and injunctive relief are available in connection with her claims under Section 1983, the OCSPA and the Corrupt Practices Act. *Id*.
   The Court notes, however, that declaratory relief has been permitted in FDCPA cases and this Court has previously recognized that a Rule 23(b)(2) class certification may be appropriate in FDCPA cases. *See Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 394 (S.D. Ohio 2008); *Tedrow v. Collins*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *23-24 (S.D. Ohio Sept. 12, 2007).

17

corresponding declaratory relief is appropriate respecting the class as a whole[.]"

In the case *sub judice*, plaintiff alleges that the City subjected the putative class and subclass members to general practices and procedures to help payday lenders collect debts owed under payday loan transactions and that the extent to which these activities were subject to, exempted from, and/or in violation of the FDCPA, OCSPA and the Ohio Corrupt Practices Act is an issue in this litigation. Plaintiff, on behalf of the putative class, seeks declaratory and injunctive relief as to alleged violations of the OSCPA and Corrupt Practices Act. *Amended Complaint*, ¶¶ 91-98, 111-118. The City does not argue that plaintiff has not met the requirements under Rule 23(b)(2). Accordingly, this Court concludes that certification under Rule 23(b)(2) is warranted.

**F. Rule 23(b)(3) Requirements**

Plaintiff also contends that she has satisfied the requirements for class certification under Rule 23(b)(3). Rule 23(b)(3) allows certification where the court concludes that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A plaintiff who cannot meet either the predominance or superiority requirements cannot successfully seek certification under this subsection. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

As discussed *supra*, plaintiff argues that the City's practices and use of standard form letters give rise to common questions that, when resolved, will determine the claims of the proposed class and

18

subclass. As a result, plaintiff contends, common questions of liability predominate. The City does not contend that plaintiff fails to meet the requirements of Rule 23(b)(3). Accordingly, the Court concludes that certification under Rule 23(b)(3) is appropriate.

### III. *City's Motion to Dismiss*

The City moves to dismiss plaintiff's claims against it, incorporating by reference the *City's Memo. Contra Plaintiff's Motion to Certify*. Those arguments have been considered and rejected by this Court. Accordingly, this Court concludes that the *City's Motion to Dismiss* is without merit.

**WHEREUPON**, *Plaintiff's Renewed Supplemental Motion for Certification of Plaintiff Class and Subclass as to Claims Against the City of Columbus*, Doc. No. 149, is **GRANTED** and *Motion of Defendant, City of Columbus, to Dismiss Plaintiff's Claims*, Doc. No. 167, is **DENIED**.

The Court **CERTIFIES** a class of plaintiffs consisting of all persons who at any time on or after January 1, 2001 were or will be the subject of a debt collection communication from and through the City of Columbus' Check Resolution Program in connection with an attempt to obtain payment of a "payday" loan allegedly owed Check$mart, Quick Cash USA, or Always Payday under a loan agreement governed by R.C. 1315.35 – 1315.44.

The Court also **CERTIFIES** a subclass of plaintiffs consisting of all persons subjected to such action(s) on or after January 1, 2002.

19

March 11, 2010                         *s/Norah McCann King*
                              Norah M$^c$Cann King
                        United States Magistrate Judge