**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TRACY PASSA,**

    **Plaintiff,**

    vs.                                      Civil Action 2:03-CV-81
                                                Magistrate Judge King

**CITY OF COLUMBUS, OH,**
*et al.*,

    **Defendants.**

## OPINION AND ORDER

Plaintiff Tracy Passa ("plaintiff"), acting on behalf of herself and a putative class of plaintiffs, alleges that defendants violated federal and state law based on their participation in the City of Columbus' ("City") Check Resolution Program. Named as defendants in the *Amended Complaint*, Doc. No. 33, are the City, Buckeye Check-Cashing, Inc., and BCCI Management Co. dba Check$mart (collectively "Check$mart"), Quick Cash Advance, Inc., dba Quick Cash USA ("Quick Cash") and Cash Till Payday, Ltd., dba Always Payday ("Always Payday") (the latter four referred to, collectively, as "the payday lenders"). *Id.*, ¶¶ 84-118. With the consent of the parties, 28 U.S.C. §636(c), this matter is now before the Court on *Plaintiff's Second Renewed Supplemental Motion for Certification of the Plaintiff Class as to Claims Against Defendants [Payday Lenders]*, Doc. No. 164 [" *Plaintiff's Motion to Certify*"], *Defendants Buckeye Check Cashing, Inc. and BCCI Management Co.'s Motion to Strike and Enforce Final Judgment and Dismiss,* Doc. No. 169 ["*Defendant Check$mart's Motion to Dismiss*"], and *Defendant Buckeye Check Cashing Inc and BCCI Management Co.'s Motion to Stay Proceedings*, Doc. No. 170 ["*Defendant Check$mart's Motion to Stay*"].

## I.     FACTS AND RELEVANT PROCEDURAL BACKGROUND

Plaintiff, a resident of Noble County, Ohio, obtained several "pay day" loans from Check$mart, a business located in Zanesville, Ohio, and licensed to make such loans pursuant to O.R.C. § 1315.35 *et seq*. *Amended Complaint*, ¶¶ 18-22, 57.  Plaintiff issued post-dated checks to serve as collateral for those loans.  *Id*. at ¶ 23, 59.  For one of those loans, plaintiff and Check$mart executed a contract dated April 24, 2002 ("*Contract*"); the contract provided that Check$mart would loan $400.00 to plaintiff and that plaintiff would agree to pay to Check$mart $460.00 on May 8, 2002.  *Id*. at ¶¶ 26, 63; *Deferred Deposit, Early Deposit Clause and Disclosure Agreement*, Doc. No. 146-15.  Plaintiff informed Check$mart that she could not repay that loan and that the post-dated check that she had given it as collateral would be dishonored if negotiated.  *Amended Complaint*, ¶ 65.  After plaintiff failed to repay the May 8, 2002, loan, Check$mart attempted to negotiate the post-dated check.  *Id*. at ¶¶ 29, 65.  Plaintiff's checking account contained insufficient funds to cover the check.  *Id*. at ¶¶ 65, 66.

At the time, the City maintained a Check Resolution Program through the Dispute Resolution Unit of the City Attorney's Office.  *Id*. ¶ 26.  Under the program, merchants eligible to participate in the Check Resolution Program filed a certified case submission application with the prosecutor's office in Columbus, Ohio.  *Id*. at ¶¶ 27-32.  The case submission was automatically accepted and a hearing date was docketed. *Id*. at ¶ 36.  Notices were then mailed from the prosecutor's office to the alleged delinquent customer requesting that the customer appear at the Franklin County Municipal Court to resolve a complaint made against

the customer. *Id.*

On July 11, 2002, the City sent plaintiff a letter indicating that Check$mart had scheduled a mediation through the Check Resolution Program, to be held on July 31, 2002, at 4:30 p.m., in an attempt to resolve the dispute related to the May 8, 2002, payday loan. *Id.* at ¶¶ 76-78 and Exhibit 9, p. 1, attached thereto. Plaintiff did not attend this mediation. *Id.* at ¶ 80. On August 6, 2002, the City sent a second notice to plaintiff, indicating that another mediation would be held on August 14, 2002. *Id.* and Exhibit 9, p. 3, attached thereto.

The *Complaint* asserted claims only against the City. *Complaint,* Doc. No. 1. On July 24, 2003, this Court granted the City's motion to dismiss for failure to state a claim for relief. *Opinion and Order,* Doc. No. 16. However, that judgment was reversed on appeal. *Passa v. City of Columbus,* Case No. 03-4111 (6th Cir. February 16, 2005); *see also* Doc. No. 21. Thereafter, plaintiff amended the complaint and joined the payday lenders as defendants. *Amended Complaint,* Doc. No. 33. The Court denied motions to dismiss challenging plaintiff's standing to assert claims against the payday lenders with whom she had no contractual relationship. *Opinion and Order,* Doc. No. 80.

The *Amended Complaint* alleges that all defendants violated the Fair Debt Collection Practice Act, 15 U.S.C. §1692 *et seq.* ["FDCPA"], although plaintiff appears to seek relief from only the City on this claim. *Id.,* at ¶90. The Second Claim for Relief, *id.,* at ¶¶91-98, alleges that the defendant payday lenders violated the Ohio Consumer Sales Practices Act, O.R.C. §3145.01 *et seq.* ["OCSPA"] by, *inter alia,* charging fees in excess of those permitted by the Ohio Check-Cashing

3

Business Act, O.R.C. §§1315.40, .41 ["OCCBA"].[1] The Third Claim for Relief asserts a general claim against all defendants under 42 U.S.C. §1983. *Id.*, at ¶¶99-100. The Fourth Claim for Relief alleges that the payday lenders committed fraud when they certified to the City that plaintiff and putative class members passed bad checks with intent to defraud. *Id.*, at ¶¶101-110. Finally, the Fifth Claim for Relief alleges that, by violating the OCCBA, the defendant payday lenders engaged in a pattern of corrupt activity in violation of O.R.C. §§2923.32, .34 ["Ohio's RICO Act"]. *Id.*, at ¶¶111-118.

On March 6, 2007, the Court denied the City's first motion for summary judgment, in which the City argued that it does not qualify as a "debt collector" under the FDCPA or as a "supplier" under the OCSPA. The Court reasoned that, in light of the City's own description of its Check Resolution Program,[2] genuine issues of material fact existed regarding the City's status under those statutes. *Opinion and Order*, Doc. No. 118. The Court ultimately determined that the City did not qualify for an exclusion to the definition of "debt collector" under 15 U.S.C. § 1692a(6)(c). *Opinion and Order*, Doc. No. 141.

The Court also concluded that plaintiff's individual claims against Check$mart were subject to arbitration in accordance with the *Contract*. *Opinion and Order*, Doc. No. 83. Those claims were therefore ordered to arbitration. *Id.* After discovery, briefing, a hearing and supplemental submissions, the arbitrator issued a decision on June 18,

---

[1] These and many other provisions of the OCCBA have, since the filing of this action, been repealed.

[2] The City's website during the relevant time period contained the following language: "The Check Resolution Program assists in the collection of money unpaid to merchants due to the passing of bad checks." *See Opinion and Order,* p.6, Doc. No. 118.

4

2007. *Award of Arbitrator* ("June 18, 2007 Arbitration Award"), attached as Exhibit 4 to *Plaintiff Tracy Passa's Motions under 9 U.S.C. §§9-12*, Doc. No. 133. The arbitrator dismissed with prejudice all of plaintiff's claims submitted to arbitration except the claim under the OCSPA alleging a violation of the OCCBA.[3] Plaintiff's request for rescission was granted conditional upon her return of the $400.00 advanced to her. *Id.*, p.6. On March 11, 2008, this Court confirmed the June 18, 2007 Arbitration Award. *Opinion and Order*, Doc. No. 148.

Plaintiff filed a notice of appeal from the Court's referral to arbitration and from the Court's confirmation of the arbitration decision. *Notice of Appeal,* Doc. No. 153. Little progress was made in the litigation during the nearly one year that plaintiff's appeal was pending. Plaintiff eventually voluntarily dismissed her appeal. *See Order of the United States Court of Appeals,* Doc. No. 159.

Thereafter, plaintiff filed renewed supplemental motions to certify in connection with her claims against the City and the payday lenders.[4] Document Nos. 149, 164. Check$mart has filed a motion to dismiss the claims asserted against it, Doc. No. 169, and to stay proceedings on plaintiff's motion to certify pending resolution of its motion to dismiss. Doc. No. 170. Plaintiff does not oppose the motion to stay. *Plaintiff's Response to Defendant Buckeye-Cashing Inc. and BCCI Management Co.'s to Stay Proceedings*, Doc. No. 188. Always Payday has

---

[3] The arbitrator specifically found that Check$mart could not document that its own bank charged a $5.00 returned check fee, which it then passed on to plaintiff. Because the OCCBA permitted recovery of check collection fees of, *inter alia,* amounts charged by another financial institution for a returned check, the arbitrator found that this failure of evidence constituted a violation of the OCCBA, which was remediable under the OCSPA. June 18, 2007 Arbitration Award, p.5.

[4] Plaintiff's *Renewed Supplemental Motion for Certification of Plaintiff Class and Subclass as to Claims Against the City of Columbus,* Doc. No. 149, has been granted. *Opinion and Order,* Doc. No. 190.

filed a memorandum in opposition to plaintiff's motion to certify, Doc. No. 171, and plaintiff has filed a reply, Doc. No. 186.

**II. Discussion.**

As it relates to the defendant payday lenders, plaintiff seeks to certify a class of plaintiffs in connection with the second and fifth claims for relief in the *Amended Complaint*. Although plaintiff's articulation of these claims is not entirely clear, it appears that plaintiff intends to pursue class certification only as to the claim upon which she prevailed at arbitration, *i.e.*, that by charging a returned check fee in excess of that authorized by the OCCBA, O.R.C. §§1315.40, .41, a payday lender violates the OCCBA, the OCSPA and Ohio's RICO Act. *Plaintiff's Motion to Certify*, pp. 6-7.

Check$mart argues in its *Motion to Dismiss* that the June 18, 2007 Arbitration Award, this Court's orders compelling arbitration, *Opinion and Order,* Doc. No. 83, and confirming the arbitrator award, *Opinion and Order,* Doc. No. 148, and plaintiff's dismissal of her appeal from those orders serve as evidence of a final judgment on plaintiff's claims against Check$mart; that final judgment, Check$mart contends, forecloses further litigation against it by plaintiff.

This Court's confirmation of the June 18, 2007 Arbitration Award was a final, appealable order. *See* 9 U.S.C. §16(a)(1)(D); *Grain v. Trinity Health, Mercy Health Services, Inc.,* 551 F.3d 374, 377–78 (6th Cir. 2008). Plaintiff's voluntary dismissal of her appeal from that order leaves this Court's judgment on that issue final.

Plaintiff does not appear to argue that she may yet pursue her individual claims against Check$mart notwithstanding the final resolution

6

of those claims. Rather, plaintiff argues that the resolution of her individual claims has no impact on her ability to pursue her class claims against the payday lenders, including Check$mart, on behalf of a plaintiff class. Plaintiff argues that, because the *Amended Complaint* demanded class certification of the claims against the payday lenders, which demand has never been expressly resolved, she retains a personal stake in obtaining class certification that is separate from the merits of her individual claims. *Plaintiff's Response in Opposition,* p.4, Doc. No. 178. According to plaintiff, her case against the payday lenders, including Check$mart, is not moot because her "personal stake in obtaining class certification is separate from the merits of [her] individual case. ..." *Id.,* p.8.

As an initial matter, the Court notes that plaintiff resisted referral of her claims to arbitration on the ground that enforcement of the arbitration provision in the *Contract* would abrogate her right to pursue remedies on a class basis. *See Opinion and Order,* pp. 18-19, Doc. No. 83. This Court rejected that argument, *id.,* and as previously noted plaintiff's appeal from that order, *see Notice of Appeal,* Doc. No. 153, was voluntarily dismissed. It is not unreasonable to now foreclose to plaintiff the opportunity to re-litigate that position.

Moreover, the Court is not persuaded that plaintiff retains a personal stake in class certification of claims against Check$mart sufficient to satisfy the case or controversy requirement of Article III. In support of her argument to the contrary, plaintiff refers to two decisions of the United States Supreme Court, *United States Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326 (1980).

In *Geraghty,* a federal prisoner challenged the parole release guidelines after twice having been denied parole. The plaintiff in that case sought certification of a class of "all federal prisoners who are or will become eligible for release on parole." *Id.,* at 393. The District Court had declined to rule on the certification issue and instead addressed the substantive issues on summary judgment. While the case was pending on appeal, the plaintiff was released from prison. The Parole Commission thereafter moved to dismiss the appeal, arguing that plaintiff's claim had been rendered moot by his release. The Court of Appeals held that the litigation was not moot because, had plaintiff's claims been properly certified as a class action prior to his release from prison, a live controversy would still exist as to other prisoners despite plaintiff's loss of a personal stake in the outcome of the case. The United States Supreme Court agreed, holding that a "named plaintiff[] whose claims are satisfied through entry of judgment over [his] objections may appeal the denial of a class certification ruling." *Id.,* at 400, citing *Deposit Guarantee Nat. Bank v. Roper,* 445 U.S. 326 (1980). Thus, the Court found that the plaintiff in *Geraghty* retained a personal stake sufficient to satisfy the case or controversy requirement of Article III.[5]

In *Roper,* the Supreme Court also held that a group of plaintiffs could appeal the denial of a motion for class certification, notwithstanding the fact that their individual claims had been resolved by a Rule 68 offer of judgment. In *Roper,* the plaintiff sued a bank for

---

[5]The Supreme Court also observed that a live controversy remained, as evidenced by motions of other prisoners to be substituted as named plaintiffs in the case, *id.,* at 396, and was careful to note that "the question of who is to represent a class [for purposes of Rule 23] is a separate issue." *Id.,* at 407.

8

charging interest in excess of the rate allowed under the National Bank Act. 445 U.S. at 328. The District Court denied class certification and the defendant then tendered to each individual plaintiff the maximum recovery authorized by the statute. The plaintiffs objected to the tender but the District Court entered judgment in plaintiffs' favor in the tendered amounts. The United States Supreme Court held that the plaintiffs nevertheless retained a personal stake in the class certification issue, despite the resolution of their individual claims, because they could have shifted part of the costs of the action to class members had their motions to certify been successful. *Id.,* at 336-37.

The facts presented in this case are not analogous to those in *Geraghty or Roper.* Unlike the plaintiffs in those cases, plaintiff Passa's individual claims were not resolved involuntarily. Rather, those claims have been rendered moot by virtue of the arbitration process, *i.e.,* a process voluntarily entered into by her as a part of her contract with Check$mart. Further, unlike in *Geraghty*, there do not appear to be individuals seeking to be substituted as named plaintiffs in this case.

In this regard, the decision of the United States Court of Appeals for the Sixth Circuit in *Pettrey v. Enterprise Title Agency, Inc.,* 584 F.3d 701 (6th Cir. 2009), is instructive. In *Pettrey,* the plaintiffs commenced action against a title agency and real estate agent alleging that defendants had engaged in a fraudulent scheme to charge customers for services not performed. A motion for class certification was denied by the District Court and plaintiffs settled their claims, including claims for attorneys fees and costs. Plaintiffs did not, however, settle the right to appeal the denial of class certification. Nevertheless, the Sixth Circuit held that the claims asserted in that

action were moot and that there no longer existed a live case or controversy for purposes of pursuing class relief. The Court reached its conclusion based on the facts that plaintiffs had voluntarily relinquished their claims through settlement and that no other party sought substitution as a named plaintiff. *Id.,* at 705. In addition, the Court observed that plaintiffs in *Pettry* maintained no personal stake in the action because "plaintiff has no litigation costs that can be shifted to putative class members." *Id.* Since the plaintiffs did not maintain "an interest in shifting a portion of their attorneys' fees and costs to the putative class members, the Court cannot avoid the conclusion that this case is moot." *Id.,* at 706.

Plaintiff in this case may argue that she maintains a stake in the action because she wishes to shift litigation costs to putative class members.[6] It is uncertain, however, that such recovery can occur on a class basis, at least with respect to Check$mart, because all of its putative class member customers could be subject to the same arbitration agreement as was plaintiff.[7]

In sum, the Court concludes that plaintiff's individual claims against Check$mart have been resolved and cannot be further litigated by her. Moreover, plaintiff's personal stake in class certification of claims against Check$mart is simply too tenuous to satisfy the case or controversy requirement of Article III.

Even assuming that a live case or controversy continues with

---

[6]The claims upon which plaintiff seeks class certification authorize the recovery of attorneys fees and costs. O.R.C. §1345.09(F); O.R.C. §2923.34.

[7]In any event, the Court has certified a class and sub-class of plaintiffs in connection with the claims against the defendant City. *Opinion and Order,* Doc. No. 190.

respect to claims against Check$mart, the Court also concludes that plaintiff has not established the elements for class certification as against any of the payday lenders.

Plaintiff seeks to certify, pursuant to F.R. Civ. P. 23(b)(2) and 23(b)(3), a class of plaintiffs defined as

> [a]ll persons who at anytime on or after January 1, 2001 were or will be the subject of a debt collection communication from and through the City of Columbus' Check Resolution Program in connection with an attempt to obtain payment of a "Payday" loan allegedly owed Check$mart, Quick Cash USA, or Always Payday under a loan agreement governed by R.C. §§1315.35-1315.44.

*Plaintiff's Motion to Certify*, p.1. Plaintiff clarifies that she intends to pursue class certification against the payday lenders only on the second and fifth claims for relief in the *Amended Complaint,* Doc. No. 32, *i.e.,* "the payday lenders' violations of the [OCSPA] (only as it relates to the violations of the [OCCBA]) and the Ohio Check-Cashing Business Act, O.R.C. §1315.35, *et seq.*"  *Id.,* pp. 1-2.

Under Rule 23 of the Federal Rules of Civil Procedure, a party seeking class certification must first establish certain prerequisites:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately represent the interests of the class.

F.R. Civ. P. 23(a). "In order to obtain class certification, [a]

plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman v. GMAC,* 296 F.3d 443, 446 (6th Cir. 2002). The trial court must conduct a "rigorous analysis" in determining whether these requirements have been met. *Bacon v. Honda of Am. Mfg.,* 370 F.3d 565, 569-70 (6th Cir. 2004) (quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982)). The party seeking class certification bears the burden of proof on the issue of certification. *See, e.g., Golden v. City of Columbus,* 404 F.3d 950, 965 (6th Cir. 2005).

Although defendant Always Payday challenges the proposed definition of the class as overbroad, there is no real dispute as to the numerosity component of plaintiff's motion. Barbara Williams, the coordinator for the City's Check Resolution Program, testified on deposition that, in 2002, the City scheduled proceedings and sent communications to thousands of individuals who dealt with the defendant payday lenders. *Deposition of Barbara Williams,* Doc. No. 106, Exhibits 7 and 8. The numerosity requirement of Rule 23(a)(1) has therefore been met.

Rule 23(a)(2) also requires as a prerequisite to class certification that the claims sought to be certified present questions of law or fact common to the class. Although Rule 23(a)(2) refers to "questions" of law or fact, the United States Court of Appeals for the Sixth Circuit has clarified "that there need only be one question common to the class." *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998)(*en banc*). However, not every common question will suffice; the question must be "a common issue the resolution of which will advance the litigation." *Id.*

Plaintiff suggests as common questions of law and fact the defendant payday lenders' use of the City's Check Resolution Program, "the common charges and fees, if any, whose collection they customarily sought; the extent to which their activities were subject to the [OCSPA] and whether those practices and activities violated legal prohibitions established by [the OCSPA or the OCCBA]." *Plaintiff's Motion to Certify,* p.13. This Court concludes that plaintiff's articulation of common issues is insufficient. Certainly, the application of state laws to payday lenders is an issue so broad as to be meaningless. Moreover, plaintiff's reference to "the common charges and fees, if any, whose collection they customarily sought," *id,* suggests that there may in fact be **NO** common charges and fees either among the members of the putative class or among the defendant payday lenders. Certainly, plaintiff has proffered no evidence of such common charges and fees. Moreover, Check$mart has indicated its intention to enforce the mandatory arbitration clause contained in its contracts with each putative class member. *Defendant Check$mart's Motion to Dismiss*, p. 14 n.4. The necessary individualized determination of the enforceability of such provision militates against a finding of commonality sufficient to satisfy Rule 23(a)(2).

The Court has similar reservations as to the issue of typicality. Under Rule 23(a), the plaintiff must also demonstrate that the class representative's claims and defenses "are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). More specifically,

> [t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so

> that the court may properly attribute a collective
> nature to the challenged conduct .... A necessary
> consequence of the typicality requirement is that
> the representative's interests will be aligned with
> those of the represented group, and in pursuing his
> own claims, the named plaintiff will also advance
> the interests of the class members.

*Sprague*, 133 F.3d at 399 (quoting *In re Am. Med. Syst., Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996)). "As goes the claim of the named plaintiff, so go the claims of the class." *Sprague,* 133 F.3d at 399.

The remedies available in connection with the claims that plaintiff seeks to certify include damages or rescission. O.R.C. §1345.09. Plaintiff has already opted for rescission. June 18, 2007 Arbitration Award, p.5. Plaintiff's remedial theory, therefore, is not necessarily typical of the remedial theory of other members of the putative class. Moreover, the fact that plaintiff has elected a particular form of relief in connection with her individual claim may cast doubt on her ability to serve as an adequate representative as required by Rule 23(a)(4). *See Stout v. J.D. Byrider,* 228 F.3d 709, 717-18 (6th Cir. 2000)(named plaintiffs who obtained relief that differed from class members are not adequate representatives).

In short, the Court concludes that plaintiff has failed to establish all of the prerequisites to class certification under F.R. Civ. P. 23(a). Because plaintiff has not established the prerequisites to class certification under F.R. Civ. P. 23(a), the Court need not, and does not, consider whether a plaintiff class might appropriately be certified under Rule 23(b)(2) or (b)(3).

**WHEREUPON** *Defendant Check$mart's Motion to Dismiss*, Doc. No. 169, is **GRANTED**. *Plaintiff's Motion to Certify*, Doc. No. 164, is **DENIED.**

*Defendant Check$mart's Motion to Stay*, Doc. No. 170, is **DENIED** as moot.

*Plaintiff's Renewed Supplemental Motion for Certification of Plaintiff Class and Sub-class as to Claims Against the Payday Lender Defendants*, Doc. No. 150, is **DENIED** as moot.


March 30, 2010                    *s/Norah McCann King*
                                   Norah M<sup>c</sup>Cann King
                              United States Magistrate Judge